UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KHARIS MUSALEEV et al.,<br><br>         *Plaintiffs*,<br><br>    v.<br><br>RENA BITTER, Assistant Secretary for Consular Affairs, Department of State, et al.,<br><br>         *Defendants*. | Civil Action No. 24-1100 (TJK) |

**MEMORANDUM OPINION**

In early 2023, Dr. Kharis Musaleev and his family applied for nonimmigrant visas so that he could come to the United States to work as a technical sales engineer. He alleges that the applications have languished in administrative processing since his family interviewed at the U.S. embassy in Armenia almost two years ago. After multiple attempts to move the process along, the Musaleev family sued several government officials for the delay. Defendants move to dismiss for lack of jurisdiction and failure to state a claim. For the following reasons, the Court will grant the motion—partly on jurisdictional grounds, and partly on the merits.

**I.    Background**

Dr. Kharis Musaleev is a Russian citizen. ECF No. 10 ("Am. Compl.") ¶ 8. He lives in that country with his wife Alina and their two children. *Id.* At some point, a United States company called Altor, LLC offered Dr. Musaleev a position as a technical sales engineer. *Id.* Altor then filed an O-1A petition on Dr. Musaleev's behalf in December 2022. *Id.* ¶¶ 8, 19. Such a petition may "authoriz[e]" a "qualified alien" to "come to the United States to perform" certain services. 8 C.F.R. § 214.2(o)(1)(i). As relevant here, this "O-1 classification" covers aliens with "extraordinary ability in the sciences, arts, education, business or athletics" if they are "coming

temporarily to the United States to continue work in the area of extraordinary ability." *Id.* § 214.2(o)(1)(ii)(A)(*1*). The United States Citizenship and Immigration Services approved Altor's O-1A petition, *see* Am. Compl. ¶ 8, but Dr. Musaleev and his family[1] still needed to "apply for a visa or seek admission to the United States," § 214.2(o)(1)(i).

Dr. Musaleev did so by applying for a visa in early 2023, and he completed his interview at the U.S. embassy in Armenia on February 22 of that year. Am. Compl. ¶¶ 21–22. While at the embassy, he "was told that a decision on the visa applications . . . could not be made at this time." *Id.* ¶ 23. The embassy's consular section emailed him three weeks later to request more information "as part of [his] administrative processing." *Id.* ¶ 24. Dr. Musaleev sent that information within five days. *Id.* In July 2023, the embassy returned the original documents that Dr. Musaleev had provided when he interviewed. *Id.* ¶ 26.

Dr. Musaleev says that there has been radio silence since then. During that time, he has been unable to work at Altor, placing his "employment in jeopardy." Am. Compl. ¶ 37. His counsel submitted a request to expedite in April 2023 to move things along and, in January 2024, told the embassy that Dr. Musaleev would sue based on the delay. *Id.* ¶¶ 25, 27. Still without action on the applications, Dr. Musaleev did just that in April 2024.

In the amended complaint, Dr. Musaleev brings three claims against several parties: the Assistant Secretary for Consular Affairs, the Deputy Assistant Secretary for Visa Services, the Ambassador to Armenia, and the Secretary of State. Specifically, he alleges that the delay violates the Administrative Procedure Act, 5 U.S.C. § 706(1), and that he is entitled to relief under that

---

[1] Because Dr. Musaleev is the specific individual for whom Altor filed an O-1A petition, the Court follows the parties' lead and focuses on him as the lead petitioner. That focus makes no difference for the outcome; the dispositive analysis remains the same whether keyed to Dr. Musaleev's application or those of the entire family.

2

statute and 28 U.S.C. § 1361. Am. Compl. ¶¶ 33–44. He also requests a declaratory judgment under 28 U.S.C. § 2201 *et seq.* that the delay is unlawful. *See* Am. Compl. ¶¶ 45–47. Finally, he alludes to a due-process violation. *Id.* ¶ 38. Defendants move to dismiss the amended complaint on several grounds.

## II.     Legal Standards

A plaintiff must establish the Court's subject-matter jurisdiction to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged,' . . . and upon such facts determine[s] jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Without subject-matter jurisdiction over a claim, the Court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a facially plausible claim when he pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**III.     Analysis**

Defendants raise several threshold arguments for dismissal. They say that three of them—the Secretary of State, Assistant Secretary for Consular Affairs, and Deputy Assistant Secretary for Visa Services—cannot provide the relief that Dr. Musaleev seeks. *See* ECF No. 13 at 21–22. Next, they argue that Dr. Musaleev lacks Article III standing because he does not allege a redressable and concrete injury. *See id.* at 22–31. On top of those jurisdictional problems, Defendants add that the doctrine of consular non-reviewability bars review, *see id.* at 31–38, that mandamus relief is off the table because Dr. Musaleev identifies no required agency action, *see id.* at 38–47, and that the delay in this case is not unreasonable, *see id.* at 47–56. Finally, Defendants contend that the due-process allegations—to the extent Dr. Musaleev tries to raise a claim with them—falter on the merits. *See id.* at 57–58.

The Court disagrees with most of Defendants' jurisdictional arguments but agrees that the roughly two-year delay is not unreasonable (and that the amended complaint does not state a due-process claim), so it stops there. Because consular non-reviewability is "not a jurisdictional defense," the Court "need not decide" whether that doctrine precludes judicial review. *Janay v. Blinken*, No. 23-cv-3737 (RDM), 2024 WL 3432379, at *10 (D.D.C. July 16, 2024). And because Dr. Musaleev has "not suffered an unreasonable delay" warranting mandamus relief, the Court may "assume without deciding that" Dr. Musaleev "allege[s] the defendants are subject to a discrete required duty." *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *4 (D.D.C. Feb. 15, 2024).[2] The bottom line is the same: the Court will grant Defendants' motion to dismiss.

---

[2] Although the Court need not address this issue here, the D.C. Circuit's recent decision in *Karimova v. Abate* suggests that Dr. Musaleev has not identified "a legally required, discrete act that the agency has failed to perform." No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024) (cleaned up) (quoting *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009)). There, the Circuit explained that a visa applicant had not "identified any law" clearly

4

**A.  Dr. Musaleev Has Standing Against Most Defendants To Challenge the Delayed Adjudication**

Article III of the Constitution limits the authority of federal courts, which "may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988).  The doctrine of standing is a "core component"—"an essential and unchanging part"—of this "case-or-controversy requirement."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Establishing standing requires a plaintiff to show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Defendants contend that Dr. Musaleev falters on the first and third elements.  He has suffered no cognizable injury, they say, because Dr. Musaleev asserts only the harm of "being unable to travel to the United States and apply to admission into this country."  ECF No. 13 at 24.  And any injury he has suffered is not redressable by an "order compelling re-adjudication"—that is, the relief he seeks will not fix the harm he asserts.  *Id.* at 30.  Both arguments miss the mark for reasons that judges in this District have explained many times.

First, Defendants misunderstand the injury that Dr. Musaleev asserts.[3]  He does not seek to vindicate only a right to travel to the United States.  Instead, Dr. Musaleev alleges a "procedural right to reasonably expeditious agency action that is tethered to [his] concrete professional and

---

requiring a consular officer "to either issue her a visa or refuse her application, without then also placing it in administrative processing."  *Id.*  That reasoning tracks Judge McFadden's analysis in *Yaghoubnezhad v. Stufft*, where he held that no "statute or regulation require[s] [the State Department] to complete 'administrative processing' once it has already properly refused a visa."  734 F. Supp. 3d 87, 101 (D.D.C. 2024).

[3] Defendants aim their jurisdictional arguments at Dr. Musaleev rather than at the other family members.  And the Court "need not consider the standing of the other plaintiffs" so long as "at least one plaintiff" has standing to bring a claim, *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 18 (D.D.C. 2020), which is true here.

5

financial interest" in working as a technical sales engineer for Altor. *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023) (citation omitted). And he claims that the delay has not only prevented him from starting that job but has also placed his "employment in jeopardy." Am. Compl. ¶ 37. This kind of "injur[y]" to his "professional and financial interests," premised on the delayed adjudication, is enough. *Babaei v. Dep't of State*, 725 F. Supp. 3d 20, 26 (D.D.C. 2024); *see also, e.g.*, *Kahbasi v. Blinken*, No. 23-cv-1667 (LLA), 2024 WL 3202222, at *3 (D.D.C. June 27, 2024) (constitutional standing where plaintiff "may lose a research and teaching position").

Second, this injury is redressable. Dr. Musaleev asks for an order compelling Defendants "and those acting under them to . . . render a decision" on the pending visa applications. Am. Compl. at 13. This relief is appropriate, he alleges, because Defendants "have failed to adjudicate" the applications, which have been mired in administrative processing since early 2023. *See id.* ¶¶ 24, 47. And when visa "applications are still pending administrative processing," the applicant's "injuries may be redressed with an order to complete that review more expeditiously." *Babaei*, 725 F. Supp. 3d at 26–27 (internal quotation marks and citation omitted).

Resisting this conclusion, Defendants argue that Dr. Musaleev seeks an order directing "State Department officials to *re-adjudicate* his O-1A Visa Application." ECF No. 13 at 30. And because the "United States has refused" that application already, forcing another decision will not "produce a different result." *Id.* But the factual allegations, accepted as true and construed in Dr. Musaleev's favor, say that the applications are in administrative processing—a process that might result in further action.[4] *See, e.g.*, Am. Compl. ¶¶ 23–24 (alleging that the embassy told Dr.

---

[4] Defendants point to the State Department "Visa Status Check" website and contend that, if Dr. Musaleev's application number is entered, the website shows the visa application as

Musaleev that a decision "could not be made at th[is] time" and that he provided documents for "administrative processing" a month later). So the injury of unreasonable delay "would be redressed by a decision, one way or another." *Babaei*, 725 F. Supp. 3d at 27. For that reason, "[c]ourts in this district have . . . held that those seeking to challenge unreasonable delay in their visa applications possess constitutional standing." *Khan v. Blome*, No. 22-cv-2422 (JEB), 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022). That reasoning extends to cases where the "applications have been refused pending further review" because the applicant's "injuries plausibly may be redressed with an order to complete that review more expeditiously." *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 97 (D.D.C. 2024).

Defendants next argue that Dr. Musaleev lacks standing to sue some of them specifically. To establish standing against a defendant, a plaintiff must allege "that his injury is causally connected to the defendant's conduct and can likely be redressed by a favorable decision." *Rashidi v. Dep't of State*, No. 23-cv-1569 (JEB), 2023 WL 6460030, at *3 (D.D.C. Oct. 4, 2023) (cleaned up) (internal quotation marks and citation omitted). Dr. Musaleev has not done so, Defendants contend, because consular officers have "*exclusive* authority to review applications for visas, precluding *even the Secretary of State* from controlling their determinations." ECF No. 13 at 21 (citation and some emphases omitted). So the Secretary of State, Assistant Secretary for Consular Affairs, and Deputy Assistant Secretary for Visa Services have "no alleged role" in handling the

---

"[r]efused." ECF No. 13 at 18. No results appeared when the Court entered the provided application number. In any event, Dr. Musaleev's allegations suggest that no final decision has been made on the visa applications, so his injury would be redressable by an order directing faster adjudication through administrative processing—*i.e.*, an order telling officials to complete that process quicker. *See also Khan v. Blome*, No. 22-cv-2422 (JEB), 2022 WL 17262219, at *1 (D.D.C. Nov. 29, 2022) (explaining that the Department of State "changed its website to display the status of [visa] applications undergoing further administrative processing as 'refused' but that this "reporting change . . . reflects no change in such applicants' actual cases" (internal quotation marks and citation omitted)).

7

visa applications, meaning that they cannot redress the alleged injuries. *Id.*

The Court agrees as to the Secretary of State. Congress has "circumscribed" his "role in the visa-adjudication process" by precluding him from "controlling" the determinations of consular officers. *Zakeri v. Blinken*, No. 23-cv-3162 (TJK), 2024 WL 3273418, at *3 (D.D.C. July 2, 2024) (citation omitted). True, other courts in this District have held that 8 U.S.C. § 1104(a) does not prevent the Secretary from directing consular officers to make those determinations "within a reasonable time." *E.g.*, *Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022). But the statutory text cabins more than the Secretary's authority to control the consular officers' ultimate determinations; it exempts from that authority the "powers, duties, and functions conferred upon the consular officers *relating to* the granting or refusal of visas." § 1104(a) (emphasis added). And that carveout covers "administrative guidance for the *pace* of adjudicating visas or completing administrative processing"—*i.e.*, the kind of authority needed to redress Dr. Musaleev's delay-based injury. *Zakeri*, 2024 WL 3273418, at *3 n.3 (emphasis added). This "clear textual limitation" cuts against the idea that the Secretary "has some residual authority to control the timing" of visa adjudications. *Yaghoubnezhad*, 734 F. Supp. 3d at 98; *see also Emad v. Dep't of State*, No. 23-cv-1789 (TJK), 2024 WL 3509485, at *3 (D.D.C. July 23, 2024) (reaching same conclusion). Nor has Dr. Musaleev alleged any other source of supervisory authority for the Secretary of State. The amended complaint says only that the Secretary "is charged with the administration and enforcement of the INA"—a statute that, as explained, curtails rather than confirms his authority in this area. Am. Compl. ¶ 15.

The Deputy Assistant Secretary for Visa Services and Assistant Secretary for Consular Affairs are a different story. Dr. Musaleev alleges that the former "is charged with all matters relating to visas." Am. Compl. ¶ 13. And Defendants point to no statutory text that "purports to

limit the Deputy Assistant Secretary's authority in the administration" of visa adjudication. *Yaghoubnezhad*, 734 F. Supp. 3d at 98–99. In other words, "no statute or regulation expressly precludes the Deputy Assistant Secretary" from "manag[ing] the pace of visa adjudications." *Id.* at 99. So it is plausible that she "might redress" Dr. Musaleev's injuries. *Id.* And that is all that is required at the pleading stage.

The same holds true for the Assistant Secretary for Consular Affairs, whom Dr. Musaleev alleges "oversee[s] consular matters including the adjudication of nonimmigrant visa petitions." Am. Compl. ¶ 12. In this way, the Assistant Secretary allegedly "plays a role" in "visa adjudication timing." *Kahbasi*, 2024 WL 3202222, at *4. So "an order . . . directing" the Assistant Secretary "to move more quickly would likely redress [Dr. Musaleev's] harms." *Id.* Dr. Musaleev thus has standing to bring his claims against three defendants: the Deputy Assistant Secretary for Visa Services, the Assistant Secretary for Consular Affairs, and the U.S. Ambassador to Armenia (whose propriety as a defendant is unchallenged).

### B. Dr. Musaleev Has Failed to State a Claim for Unreasonable Delay Under the APA or the Mandamus Act

Dr. Musaleev's claims fail because he has not stated a claim for unreasonable delay under § 706(1) of the APA or under the Mandamus Act, 28 U.S.C. § 1361. *See* ECF No. 10 ¶¶ 33–44. For such claims, both statutes call for the same legal standard. *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017). The question is "whether the agency's delay is so egregious as to warrant mandamus."[5] *In re Core Commc'ns, Inc.* 531 F.3d 849, 855 (D.C. Cir. 2008) (citation omitted).

---

[5] Dr. Musaleev contends that this analysis is "fact-bound" and therefore normally inappropriate at the motion-to-dismiss stage. But courts in this District routinely decide unreasonable-delay cases on the pleadings. *See, e.g.*, *Ghadami v. DHS*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *1 (D.D.C. Mar. 19, 2020). And the Court sees no reason why Dr. Musaleev's case requires factual development in a way that these other cases did not.

9

Six factors guide this inquiry:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that the agency action is unreasonably delayed.

*Telecomms. Rsch. and Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (cleaned up and citations omitted); *see also Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors."). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). And they typically lead to "four basic inquiries." *Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023).

"First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?"

*Id.* (cleaned up and citation omitted).

1. ***TRAC* Factors 1 and 2**

The first two factors evaluate "whether the agency's response time complies with an

existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  Calculating the delay is the first step.  The clock starts on the day of the "last [g]overnment action" and stops upon "the issuance of the opinion." *Asadi v. Dep't of State*, No. 23-cv-1953 (RC), 2024 WL 3835409, at *6 n.2 (D.D.C. Aug. 15, 2024) (citation omitted).  The parties agree that February 2023—when Dr. Musaleev interviewed at the embassy—is when the last government action happened, and the Court sees no reason to disagree.  *See* ECF No. 13 at 17–18, 51; Am. Compl. ¶ 36.  So about two years have passed since that action.

Although this delay is unfortunate and regrettable, factors one and two favor Defendants.  To begin, "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka*, 246 F. Supp. 3d at 153–54.  Dr. Musaleev points to statutory text providing that "[i]t is the sense of Congress that the processing of an immigrant benefit application should be completed" within "180 days" of the application's filing.  8 U.S.C. § 1571(b).  But that language is "aspirational, rather than mandatory," and does not supply a "[c]ongressional timeline." *Shen v. Pompeo*, No. 20-cv-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021); *see also, e.g.*, *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) (§ 1571(b) is "nonbinding").  Instead, while § 1571(b) may "somewhat favor[]" a petitioner who has "waited longer than 180 days," he must still show that the delay has "reached" a certain "level of disproportionality" or that the other *TRAC* factors point towards relief.  *Da Costa*, 80 F.4th at 344.

Absent a set timeline, "the Court looks to case law for guidance." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021).  And the cases show that this delay is squarely within the realm of delays that courts in this District have found not unreasonable.  Indeed, "delays of two or three years" "typically" fall within that category.  *Asadi*, 2024 WL 3835409, at *7; *see also*

11

*Ghadami v. DHS*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law."). Even delays "between three to five years are often not unreasonable," *Babaei*, 725 F. Supp. 3d at 31 (citation omitted), as evidenced by the D.C. Circuit's recent decision holding that a delay of four and a half years did not "show that USCIS does not follow a rule of reason in processing" applications, *Da Costa*, 80 F.4th at 342. So although the unexplained two-year delay here is "undoubtedly maddening" for Dr. Musaleev, *id.*, it does not approach the "immigration delays in excess of five . . . years" that courts "generally" find to be "unreasonable," *Lee*, 2024 WL 639635, at *4 (citation omitted).

Dr. Musaleev leans on a recent case from the Middle District of North Carolina to argue that this delay is different because he has already completed his interview. In *Farahani v. Laitinen*, the court found that distinction persuasive, reasoning that many of the cases rejecting unreasonable-delay claims involved "delays in scheduling interviews." No. 23-cv-922 (TDS), 2024 WL 2785043, at *6 (M.D.N.C. May 30, 2024). Because the plaintiffs there had "already interviewed for visas with a consular officer," the first and second *TRAC* factors did not favor the government at the motion-to-dismiss stage. *Id.*

The Court respectfully disagrees with the relevance of the interview process—at least in this case. For one thing, courts in this District do not appear to have recognized this distinction. *See, e.g.*, *Ghadami*, 2020 WL 1308376, at *2, *8 (25-month delay not unreasonable where petitioner interviewed in July 2017); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 172, 175 (D.D.C. 2020) (two-year delay not unreasonable where petitioner interviewed in December 2017); *Dastagir*, 557 F. Supp. 3d at 162, 165 (delay not unreasonable where petitioner interviewed 29 months before filing suit). For another, the factors do not suggest that the distinction drawn in *Farahani* carries

12

the weight that the court placed on it. Recall the purpose of those factors: to assess "the length of the delay in light of the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency" while accounting for any congressional timelines. *Da Costa*, 80 F.4th at 340, 344 (internal quotation marks and citation omitted). Dr. Musaleev never explains why the existence (or absence) of a completed interview affects the complexity of the agency's tasks or implicates fewer resources. A consular office may try to interview petitioners quickly, which would reduce the resources available for evaluating applications in administrative processing. Or it may flip that prioritization and delay interviews to ensure that, once interviewed, a petitioner is more likely to receive a quick decision. The Court sees no basis—and Dr. Musaleev offers none—to call one process more concerning under the *TRAC* factors than the other. So the timing of Dr. Musaleev's interview does not tilt the first two *TRAC* factors his way. Instead, those factors favor Defendants for the reasons discussed above.

### 2. *TRAC* Factor 4

The fourth factor, which considers how "expediting" Dr. Musaleev's application would affect agency priorities, favors Defendants too. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020). This factor often "carries the greatest weight," *id.*, because courts typically hesitate "to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue'" while "simply mov[ing] all others back one space," *Lee*, 2024 WL 639635, at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)). In other words, ordering expedited agency action is inappropriate when that relief "would necessarily come at the expense of other similarly situated applicants" with "no net gain" in adjudications achieved. *Da Costa*, 80 F.4th at 343–44 (citations omitted). That is so even though "the effect of an individual case would be minimal." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021). After all, "an accumulation of such individual cases being pushed by judicial fiat to the front of the line

would erode the ability of agencies to determine their priorities." *Id.* Because that is precisely the kind of relief that Dr. Musaleev seeks, and because his opposition never addresses that problem, this factor "heavily favors" Defendants. *Id.*

### 3. *TRAC* Factors 3, 5, and 6

Factors three and five focus on the harm that Dr. Musaleev "suffer[s] from waiting." *Tahavori v. Blinken*, No. 23-cv-1460 (JDB), 2024 WL 1328546, at *5 (D.D.C. Mar. 28, 2024). The former explains that delays are less likely to be reasonable when "human health and welfare" rather than "economic" interests are "at stake." *Da Costa*, 80 F.4th at 344. Operating as a "broader version of the same idea," the fifth factor accounts for "the nature and extent of the interests prejudiced by the delay." *Id.* (citation omitted).

These factors slightly favor Dr. Musaleev. Despite receiving an employment offer from Altor, Dr. Musaleev has been unable to start working for the company because of the delay. Am. Compl. ¶ 8. More than that, the delay has jeopardized that employment moving forward. *Id.* ¶ 37. Those interests are in some sense economic because they concern Dr. Musaleev's ability to make money, so factor three suggests that this kind of prejudice is less helpful for him. But a delay that prevents an individual from earning a living in the United States and bringing his family with him affects human "welfare" too. Still, this case is not one where, for example, the plaintiff is "separated from his children and wife" pending the adjudication of his visa. *Ghadami*, 2020 WL 1308376, at *9 (finding that the third and fifth factors "weigh in" the plaintiffs' "favor" but concluding that they "failed to state a claim . . . for unreasonable delay" anyway). So even though these factors tilt towards Dr. Musaleev, they "do not overcome the other factors that weigh strongly in the [defendants'] favor." *Dastagir*, 557 F. Supp. 3d at 168 (internal quotation marks and citation omitted).

The last factor is a wash. It says only that agency action may be unreasonably delayed

14

even if no "impropriety" is "lurking behind agency lassitude." *Ghadami*, 2020 WL 1308376, at *9. Dr. Musaleev neither alleges nor argues bad faith, so this factor comes out neutral.

\* \* \*

In sum, three factors—one, two, and four—strongly favor Defendants; two factors—three and five—slightly favor Dr. Musaleev; and one factor—six—favors neither. Balancing those factors here, the Court concludes that Dr. Musaleev has not stated a claim for unreasonable delay under the APA or the Mandamus Act. The Court does not downplay the serious problems of the "troubling backlog" of applications "waiting for . . . adjudication"—particularly, as here, when Defendants offer little explanation for the delay. *Da Costa*, 80 F.4th at 344. But this two-year delay is within the zone of delays that courts typically find insufficient to state a claim. And granting Dr. Musaleev "the relief [h]e seeks would come at the expense of other similarly-situated applicants that have waited as long (if not longer)" for an adjudication. *Asadi*, 2024 WL 3835409, at *8. Because both the APA and Mandamus claims fail, there is no basis for a declaratory judgment that Defendants ran afoul of either statute or that Dr. Musaleev is "entitled to immediate adjudication of" his visa application. Am. Compl. at 13; *see also id.* ¶¶ 45–47 (stylizing request for such relief as a separate claim).

### C.   Dr. Musaleev Has Failed to State a Due-Process Claim

Dr. Musaleev gestures at a due-process claim in his amended complaint, *see* Am. Compl. ¶ 38, but he neither elaborates there nor defends this potential claim in his opposition brief, *see generally* ECF No. 14. The Court will not craft this claim—or an argument supporting it—for him. But the limited allegations do not support a due-process claim. He says only that the "delay" violates his "right to due process under the Fifth Amendment." Am. Compl. ¶ 38. If that is meant as a procedural due-process claim, it falters because "the visa-application procedures cannot violate the Due Process Clause"; "whatever the procedure authorized by Congress is, it is due

15

process." *Al-Gharawy*, 617 F. Supp. 3d at 20 (cleaned up and citation omitted). Said another way, "the Court guarantees due process" by "assuring that" Defendants "comply with their statutory duties." *Id.* So the absence of a statutory violation dooms this potential claim. Nor would a substantive due-process claim fare any better. A "threshold hurdle" to that claim (as well as the procedural due-process claim) is "an allegation that" Dr. Musaleev "has been deprived of a fundamental right or liberty or property interest." *Taj v. Dep't of State*, No. 22-cv-1087 (RDM), 2022 WL 17250302, at *5 (D.D.C. Nov. 28, 2022) (citation omitted). But Dr. Musaleev makes no such allegation. There is typically "no property right in an immigrant visa," and Dr. Musaleev offers no other potential "constitutionally protected property or liberty interest." *Id.* at *6 (citation omitted); *see also, e.g.*, *Dean v. DHS*, No. 21-cv-2002 (CKK), 2022 WL 2785967, at *8–9 (D.D.C. July 15, 2022) (rejecting procedural and substantive due-process claims based on delayed adjudication of spouse's visa application).

**IV.   Conclusion**

For all these reasons, the Court will grant Defendants' motion to dismiss, ECF No. 13. The case is dismissed as to the Secretary of State for lack of standing and as to the remaining Defendants for failure to state a claim. A separate order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: January 28, 2025